20963

Billie K. TRAPP, Petitioner, v. The SOUTH CAROLINA BOARD OF STATE CANVASSERS, Aiken County Board of Canvassers, Aiken County Election Commission and Kline Paulk, Respondents.

(255 S. E. (2d) 670)

164

*Elliot D. Thompson* and *A. Camden Lewis*, of *Barnes, Austin & Lightsey*, Columbia, and *Peter R. Nuessle*, Aiken, *for petitioner*.

*Bernard Manning*, Columbia, *for rsependent Paulk*.

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. C. Tolbert Goolsby, Jr., Senior Asst. Atty. Gen. Treva G. Ashworth* and *Staff Atty. James M. Holly,* Columbia, *for respondents, Aiken County Board of Canvassers* and *Aiken County Election Commission.*

May 22, 1979.

LITTLEJOHN, Justice:

Kline Paulk, Republican candidate for the District 5 seat on the Aiken County Council, protested before the Aiken County Board of Canvassers to that Board's award of the seat to his Democratic opponent, Billie K. Trapp. When his protest was denied, Paulk appealed to the State Board of Canvassers, which considered the matter *de novo* and ordered all challenged ballots counted save those in Precinct 26, and ordered the County Board to hear Paulk's protest as to the Precinct 26 Ballots. It ordered that the Governor should be petitioned for a new election if the final margin was six or less, since six ballots in Precinct 10 had been lost.

The County Board followed its instructions. The result was a tie between the candidates. Trapp served notice of intention to appeal the State Board's order by way of writ of *certiorari* to this court. Governor Edwards ordered a new election, based on his power under § 7-13-1170, *Code of Laws of South Carolina* (1976), to order new elections in case of a tie. This court promptly issued the writ and temporarily restrained the election. The matter is now before us as a result of the writ.

In his petition, Trapp prays this court to set aside the action of the State Board of Canvassers and to declare her elected. By return, Paulk prays that the court dismiss the writ of *certiorari,* rescind its restraining order, and permit the election to be held. Alternatively, Mrs. Trapp asked that challenges in Precincts 27, 44 and 45 be recanvassed.

Important in our determination are the statutes relating to challenged votes. Section 7-13-830 reads as follows:

"Procedure when voter challenged.

"When any person is so challenged the manager shall explain to him the qualifications of an elector and may examine his as to the same; and if the person insists that he is qualified and the challenge is not withdrawn his vote shall be received and placed in an envelope on which shall be written the name of the voter and that of the challenger. The challenged votes shall be kept separate and apart and not counted, but turned over to the commissioners of election or the county committee having supervision of the election. At the meeting specified in either § 7-17-10 or 7-17-510, whichever is applicable, this authority shall hear all objections to such votes and when no person appears to sustain an objection made at the polls the ballot shall be removed from the envelope and mingled with the regular ballots and counted. When the challenger appears, or produces witnesses in support of the challenge, the committee in charge shall proceed to hear and determine the question. . . ."

Section 7-17-10 reads:

"Meeting and organization of county boards of canvassers.

"The commissioners of election for Governor, Lieutenant Governor, State officers, circuit solicitors, members of the General Assembly and county officers or any of such officers shall meet in some convenient place at the county seat on the Thursday next following the election, before one o'clock in the afternoon of that day, and shall proceed to organize as and shall be the county board of canvassers. . . ."

During the election, the precinct managers for Precincts 26, 27, 44 and 45 challenged a number of ballots on the grounds that the voter was not a resident of that precinct. They placed each challenged ballot in an envelope, wrote on each envelope the challenger's name and voter's name and registration number.

The County Board of Canvassers met, apparently at night, on the Thursday following the election. At the beginning of the meeting the Board announced it would sustain, solely on the basis of the information appearing on the challenge envelope, all residency challenges. Though the precinct manager for Precinct 26 was present, it is not clear whether anyone was present to sustain the challenges from Precincts 27, 44 and 45. It is abundantly clear that neither the precinct managers nor any other challengers were told of the time and place of the meeting. There is no evidence that any voters were given notice of the meeting. Inferably, the meeting was not held before one o'clock as required by statute. The County Board excluded all challenged votes on the basis of what appeared on the envelopes, without hearing witnesses.

## PRECINCT 26

On appeal, the State Board held that it was error to sustain the challenges solely on the basis of evidence appearing on the challenge envelopes. It ruled that since the challenger, the precinct manager, was present for the purpose of sustaining challenges, the requirement of Code § 7-13-830 was met, and that the County Board should have held a hearing on the challenges from that precinct. This has been done. We find no error.

## PRECINCTS 27, 44 and 45

The State Board correctly ruled that it was error for the County Board to sustain the challenges solely on the basis of the evidence appearing on the challenge envelope. However, they also held that, since no one appeared to challenge the ballots, the challenges as to these precincts were waived, under Code § 7-13-830. We agree that the statute requires challenged ballots to be counted, where no one appears to support the challenge at a proper meeting of the County Board. But a challenger does not forfeit his right by failing to appear at a meeting about which he was not told. Just as a voter must be given notice and an oppor-

tunity to be heard on the challenge of his ballot, *Hyde v. Logan,* 113 S. C. 64, 101 S. E. 41 (1919), so must a challenger. The County Board admitted it had not given the usual notice of the meeting. The challenged ballots in these three precincts shall be recanvassed after notice to all interested parties.

## PRECINCT 10

The State Board found that 15 ballots had been cast in Precinct 10, but only nine were accounted for. It ruled that if the retabulation established a margin of six or less, the election could not stand. This finding by the State Board is unsupported by the evidence and is controlled by an error of law and must be reversed.

The evidence before the State Board regarding the number of votes cast in Precinct 10 consisted of the ballots, the poll list, and the testimony of Ms. Ruthella Rearden, the Chairman of the Poll Managers for Precinct 10. The poll list and ballots clearly establish that only nine votes were cast in Precinct 10. Ms. Rearden testified that, notwithstanding the physical evidence, fifteen votes were cast in Precinct 10. Ms. Rearden was unable to give a satisfactory explanation for the disparity between her testimony and the physical evidence. There is no evidence of fraud or other wrongdoing and none is suggested.

The State Board made the following finding:

"This Board further finds that the intent of the qualified electors in Carolina Heights cannot be ascertained. This Board has heard *uncontroverted* evidence that there were fifteen (15) votes cast in the Carolina Heights Precinct No. 10 in County Council District 5. This Board finds that only nine (9) votes were found and counted. This Board finds that it is impossible to find and ascertain how the remaining six (6) votes were cast . . ." (Emphasis added.)

The State Board found that there was uncontroverted evidence that fifteen votes were cast. Ms. Rearden's testimony is the only evidence that would support a finding that fifteen

votes were cast and this testimony directly conflicts with all the physical evidence. Only nine votes were indicated on the poll list as having been cast and each of these nine ballots was found and counted. This evidence clearly controverts Ms. Rearden's testimony that fifteen votes were cast.

The error in the State Board's finding that Ms. Rearden's testimony was uncontroverted is manifest upon even the most cursory review of the transcript of record. The State Board's finding regarding Precinct 10 must be reversed since that finding is based on a view of the facts that is unsupported by the evidence.

Because Ms. Rearden's testimony was controverted by the poll list and the ballots, the evidence before the State Board regarding the number of votes cast in Precinct 10 was conflicting and was subject to two possible inferences. The State Board could have found either (1) that fifteen votes were cast, six of which were lost, or (2) that nine votes were cast, none of which were lost. The first inference would invalidate the contested election if the margin between the two candidates is six votes or less. The second inference would sustain the election. Neither inference would be unreasonable.

Both parties recognize the principle of law that all reasonable inferences must be drawn in favor of the validity of the contested election. See *Drawdy v. South Carolina Democratic Executive Committee*, S. C., 247 S. E. (2d) 806 (1978). Applying the Drawdy principle to this case, it becomes clear that the choice between the two inferences must be made in favor of the validity of the contested election.

Accordingly, the case is remanded to the County Board to recanvass the challenged ballots in Precincts 27, 44 and 45 after notice to all interested parties. The prevailing candi-

date is to be declared elected, regardless of the number of votes by which he or she prevails.

Remanded to the County Board.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.